JERRY GERK by his next friend, LOIS GERK, appellee, v. JOSEPH A. GERK, also known as J. A. GERK, appellant.

No. 52155.

JULY 14, 1966.

Baken & Greve, of Northwood, for appellant.

William Pappas, of Mason City, for appellee.

BECKER, J.—Jerry Gerk, a minor, age 18, commenced action by his mother as next friend against his father for support in such amount as appears reasonable to the court under the circumstances. The trial court ordered defendant to pay plaintiff $60 per month during his minority and while pursuing an education beyond the high school level.

Jerry's parents, defendant Joseph Gerk and Lois Gerk, were married June 12, 1937. They have had domestic difficulty at least since June 1961 when the mother left defendant and the farm home in Worth County with her two boys. Tim then 17 years old and Jerry then 14 left with her. Tim now lives apart

from both parents and is self-supporting. Mrs. Gerk and Jerry moved to Mason City, Iowa.

The domestic discord has been unfortunate, the domestic litigation has been futile. In 1961 Mrs. Gerk sued for divorce but dismissed that action. She brought suit for separate maintenance but that action was dismissed by the court in May 1963. Apparently a partition action and a suit for support money for the wife have also been filed in addition to this action by Mrs. Gerk. Mr. Gerk instituted insanity proceedings against Mrs. Gerk in the summer of 1964, but he too was unsuccessful. The insanity board dismissed the complaint.

In July 1964 Mrs. Gerk and Jerry moved back to the farm with the father. However, there is no evidence that either parent made any real effort to get along or to effectuate a meaningful reconciliation. Mrs. Gerk kept her job in Mason City. It was at this time that Mr. Gerk filed the insanity charge. The situation did not improve. Three weeks after moving in Mrs. Gerk and Jerry moved out again and have not returned. The record is replete with charge and countercharge of wrongful actions and attitudes during the period that this reunited family unit remained under the same roof. Continued recitation of factual evidence of marital discord is unnecessary in this opinion.

The financial position of the parties is relevant. At the time Mrs. Gerk left her husband in June of 1961, she took $8000 with her. She states she used this money to live on during the first three years of the separation. Her return to the farm for three weeks seems to coincide with the depletion of this fund. For a period of five weeks starting in March of 1964, as part of the unsuccessful separate maintenance action, defendant provided $50 per week support on condition that Mrs. Gerk take psychiatric treatments. He stopped such payments when the psychiatrist told him that he, the psychiatrist, could not help Mrs. Gerk. These funds constitute the sole support provided by the defendant from June of 1961 to date.

Initially, Mrs. Gerk earned $80 a month at a hospital. Subsequently, she took special training at Mason City Junior College under a government sponsored clerk-typist course and at that time received $40 a week living expenses as part of the program.

Her present take home pay is $42.89 per week as a clerk typist. She and Jerry live in Mason City.

Jerry worked part time while in high school. He had a B average up to the time he started working. With the outside work his grades went to a C+ average. He graduated from high school in June 1965. Upon graduation Jerry enrolled at Technician School at Mercy Hospital to become a surgical technician. He is paid $5 a day for this training on a five day a week basis. His scholastic marks are now straight A's. He hopes to save enough money to go to junior college for further education and thence to medical school. He has saved $940. He states that he gives his mother some money to help with the groceries.

Defendant, father of plaintiff, has been engaged in farming since 1948. He owns 395 acres of farmland the value of which he puts in excess of $200 per acre (plaintiff testifies that "they tell me it is worth between $300 to $400 an acre"). The trial court observed that there was some evidence that the farm is worth $300 per acre, and found with justification that defendant's money, bonds and other personal property were worth at least $50,000. He testified that his income is between $8000 and $10,-000 per year.

It is apparent from the record that the parents of Jerry Gerk cannot (or will not) get along as a married couple should. There is no evidence that this minor son has caused, or substantially contributed to, whatever cause underlies this discord.

Defendant's counsel in his brief states: "Perhaps the only reason for the plaintiff and his mother leaving the defendant's home is due to the mental difficulties of the plaintiff and his mother." We cannot agree that the evidence justified such a conclusion, particularly as to the young man.

Defendant relies on the following propositions: 1. There is no responsibility upon a parent to support a minor child who is living outside of the father's home. 2. A father is under no responsibility for the support of a child where the mother leaves the father without cause, taking the children with her. 3. Plaintiff in this action is an emancipated child.

I. This court has ruled on the first two of the above propositions in cases involving divorced parents. Our rulings have

been contra to defendant's position. Addy v. Addy, 240 Iowa 255, 258, 259, 36 N.W.2d 352, considered the father's duty to support his child where his former wife obtained a divorce in the State of Washington. She returned to Iowa and filed suit, for the use and benefit of their minor son, for his support. We said:

"There can be no question that upon birth of the child defendant became morally and legally obligated, aside from any statute, to support it during minority. He was not relieved of this obligation by the decree of divorce with its award of custody to the mother. While the decree severed the marital relation between husband and wife it did not divorce defendant from his obligation to provide for the wants of the child. [Citing cases]

■ "* * * A father's obligation to support his child is not abrogated by the fact the separation of the parents may have been caused by fault of the wife. Even where a divorce is granted to the father it is usually held he remains liable for support of children whose custody was awarded the mother. *The child should not be denied his right to the support of his father because of dissension between the parents for which he was not to blame.*" (Citing cases) (Emphasis supplied.)

■ II. Defendant contends that since Addy v. Addy the legislature promulgated the Uniform Support of Dependents Law, chapter 252A, Code, 1962, and that the right of the child to support must necessarily be controlled by that statute. This overlooks section 252A.8:

"Additional remedies. This chapter shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter."

It would appear that the right of the minor child to sue for support by next friend established in Addy v. Addy, supra, is not impaired by the passage of chapter 252A. For further discussion of the purpose and effect of that chapter see Keefe v. Keefe, 259 Iowa 85, 143 N.W.2d 335.

III. In Bouska v. Bouska, 249 Iowa 281, 288, 86 N.W.2d 884, we observed:

"In Iowa, parents are equally liable for the support of their

minor children. But they may contract between themselves as to liability for such support, and equally the court may order either to furnish it and to hold the other free from liability therefor. *It is true a parent may not be entirely relieved from such liability; the public policy of the State forbids.* But as between themselves one may be held liable and the other relieved, and such an agreement or decree will be binding, at least to the extent of the resources of the parent so obligated. Pappas v. Pappas, 247 Iowa 638, 75 N.W.2d 264, 266. See also the cases therein cited, especially Cushman v. Hassler, 82 Iowa 295, 297, 47 N.W. 1036, 1037." (Emphasis supplied.)

Defendant argues that the facts here show an implied agreement between the parents that the mother will furnish Jerry's support. We see no evidence of such agreement. The fact that the mother refuses to live with the father, wrongfully or otherwise, furnishes no basis for such implication. If it did the implication could not bind the minor. "A father cannot be relieved from the duty to support his minor children by agreement of the mother." Addy v. Addy, supra, and cases cited.

Schade v. Schade, 274 Wis. 519, 524, 80 N.W.2d 416, is an action for support of minor children under the Wisconsin support statutes. Following the wife-mother's unsuccessful action for divorce, the mother took the minor children with her and filed action for support under the applicable Wisconsin statutes. The Wisconsin Supreme Court's findings are in point:

"Thus, notwithstanding that minor children are improperly detained from the father by the mother, the offer by the father to support them only if they are returned to his custody is not a lawful or reasonable excuse relieving him from liability for their support where the opportunity is open to him to obtain their custody by appropriate legal proceedings."

The parent's duty to support continues unless removed or shifted in some way recognized by law. 67 C. J. S., Parent and Child, section 15(a), page 687. The father "cannot evade his obligation by permitting his children to reside apart from him with their mother, in accordance with their wishes, the father making no attempt to gain their custody, and he cannot escape his duty in such a case on the ground that the mother's

conduct toward him had been such as to justify a judicial severance of the marital relation at his instance." 39 Am. Jur., Parent and Child, section 48, page 675. Here Mr. Gerk has made no move to obtain custody of his son. The duty to furnish necessary support remains upon the defendant in this case.

IV. Defendant contends that Jerry is emancipated. He cites Cooper v. McNamara, 92 Iowa 243, 246, 60 N.W. 522. In that case custody of the son of defendant-mother had been awarded to her in a divorce decree. He had worked and kept his own wages with his mother's consent. For a time he lived away from the maternal home. Suit was brought for room and board covering that period. The court said:

"The facts certified do not show that the son was emancipated, nor that the defendant had decided not to furnish him further support. They do not show that he had ever supported himself wholly, nor that defendant expected him to do so. She really claims exemption from liability in this case on the ground that her son was able to work, was away from home, and controlled his earnings. But it is not the law that the parent is obliged to support a minor child only when he is at home, or is unable to work for his own support, or when his earnings are given to the parent. If, however, the minor refuses to remain at the place of residence his parent has provided for him, and there receive the support to which he is entitled, and, in violation of the wishes and direction of the parent, makes his home elsewhere, a question as to the liability of the parent for the support of the minor child might well arise."

In Porter v. Powell, 79 Iowa 151, 154, 44 N.W. 295, 7 L. R. A. 176, 18 Am. St. Rep. 353, the plea of emancipation was rejected as a defense to suit for medical care. This court there stated that "it is the legal as well as moral duty of parents to furnish necessary support to their children during minority."

Here the separation from the defendant parent's home is due to marital discord involving the parents. The minor still lives with one of the parents and is subject to her. No emancipation is present.

V. The remaining issue concerns the duty of parents to supply, or aid in, the education of children at the post high school level. 39 Am. Jur., Parent and Child, section 48, pages

676, 677, states: "* * * what education, if any, should be classed as necessary for the parent's child must generally be determined in a proper case from all the facts and circumstances, consideration being given not only to the station of the minor in society but also to the progress of society and the attendant requirements on the citizen of today. Although earlier authorities have been considered to support a contrary view, the trend of recent authority is to the effect that under modern conditions and in proper cases, education beyond that provided in the common schools may be a necessary which a parent is obliged to provide for his child, and that a parent able to do so may be required to bear the expense of a college education for a child evincing an aptitude therefor."

The facts of each case are important. Factors governing a proper decision include the financial condition of the parent, the ability of the minor for college work, the age of the minor, whether the child is self-sustaining or not, the father's willingness to provide an education and other factors. Annotation, 56 A. L. R.2d 1208; 18 Vanderbilt Law Review, No. 3, pages 1400 to 1428, June 1965.

An early case dealing with the problem of higher education is Esteb v. Esteb, 138 Wash. 174, 184, 244 P. 264, 267, 47 A. L. R. 110, 116. The Washington court there recognized the right of the father to determine what education to give his minor children while he has custody of them. That court then states "Parents, when deprived of the custody of their children, very often refuse to do for such children what natural instinct would ordinarily prompt them to do." Mr. Gerk gives weight to that observation in this case when he states: "I want to help support my son in the right manner, not by his bringing a lawsuit." Here the real cause of the lawsuit is dissension between the parents.

Iowa consideration of the problem occurred in Hart v. Hart, 239 Iowa 142, 148, 30 N.W.2d 748, where an application for modification of divorce decree involved the factor that one of the two sons of the defendant (seeking lowered support payments) had a partial scholarship to college. The other son was in high school. This court there said:

"The needs of plaintiff and at least the older son have mate-

rially increased. Aside from the increased cost of living, which of course affects defendant as well as plaintiff, Dick's college education will add about $500 annually to the living expenses of plaintiff and the two boys, in addition to the scholarship. It is proper that these boys have a college education. If they are to get one defendant should be called upon to comply substantially with the terms of the original decree until the boys are educated."

Defendant would distinguish Hart v. Hart, supra, on the ground that here there is no divorce or separate maintenance decree. A *de facto* separation is beyond plaintiff's control. Hence the duty to support remains unaffected.

Plaintiff's savings toward educational expenses should not deprive him of help at this time. See 39 Am. Jur., Parent and Child, section 48, pages 679, 680.

Under the circumstances at time of trial the court ordered defendant to pay $60 each month and retained jurisdiction for further consideration of the needs of the child. We agree.— Affirmed.

All JUSTICES concur.