**In re the MARRIAGE OF Myrna J. VRBAN and Gregory P. Vrban.**

**Upon the Petition of Myrna J. VRBAN, Appellee,**

v.

**and concerning Gregory P. VRBAN, Appellant.**

No. 62447.

Supreme Court of Iowa.

June 18, 1980.

Larry J. Handley of Hermann & Handley, Ankeny, for appellant.

William W. Hardin, Knoxville, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, HARRIS, and ALLBEE, JJ.

LeGRAND, Justice.

This is an appeal by respondent, Gregory P. Vrban, from a dissolution decree which awarded custody of four children to his wife, Myrna J. Vrban, provided for child support, and divided the marital property. Custody of a fifth child was awarded to respondent. We affirm the decree entered by the trial court.

Gregory does not place in issue the custody award but does challenge the economic provisions of the decree. He contends that the trial court's award of child support was excessive and attacks the property division as inequitable. He also raises the constitutionality of section 598.1(2), The Code 1977, which allows a trial court to order a divorced parent to pay support for an adult child "who is regularly attending an approved school" or who is in good faith "a full-time student in a college." We consider the constitutional issue first.

## I. THE CONSTITUTIONALITY OF SECTION 598.1(2).

The trial court ordered that the respondent pay $25 per week in child support for each of the four daughters "until such time as each becomes self supporting or through school, including college, whichever occurs first." Gregory concedes that the trial court was empowered to award support through college under section 598.1(2), The Code 1977. However, he argues the statute creates an unreasonable classification by treating adult children of divorced parents differently from adult children of married parents. While divorced parents may be required to support their adult children if the conditions of the statute are met, there is no similar obligation for those parents who remain married. Gregory asks us to hold this to be a violation of the equal protection provision of the Fourteenth Amendment to the United States Constitution and Article I, sections 1 and 6, of the Iowa Constitution.

Section 598.1(2) provides in pertinent part:

"*Support*" or "*support payments*" means any amount which the court may require either of the parties to pay under a temporary order or a final judgment or decree, and may include . . . child support . . . and any other term used to describe such obligations. Such obligations may include support for a child who is between the ages of eighteen and twenty-two years who is regularly attending an approved school . . . , or is, in good faith, a full-time student in a college, university, or area school; or has been accepted for admission to a college . . . ; or a child of any age who is dependent on the parties to the dissolution proceeding because of physical or mental disability.

As the respondent points out, this statute distinguishes the support obligations of married parents from those of divorced parents. There is no statutory requirement that married parents support their adult children except when the child suffers from some disability of mind or body and is "un-able to care for itself upon attaining majority." *Davis v. Davis*, 246 Iowa 262, 266, 67 N.W.2d 566, 568 (1954). There is no such infirmity in the present case, and we must decide if the statute violates the equal protection clause of the federal or state constitutions.

█ Since there is no suspect classification or fundamental right involved, we do not apply the strict scrutiny standard. We use, instead, the less rigorous traditional equal protection test. *Bierkamp v. Rogers*, 293 N.W.2d 577, —— (Iowa 1980); *Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978).

█ A statute will not be ruled invalid under this test "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson*, 411 U.S. 677, 681, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973); *Hawkins*, 264 N.W.2d at 729. In *Redmond v. Carter*, 247 N.W.2d 268, 271 (Iowa 1976), we summarized the test this way:

The equal protection clause proscribes state action which irrationally discriminates among persons. *Brightman v. Civil Serv. Com'n. of City of Des Moines*, 204 N.W.2d 588, 591 (Iowa 1973). We recognize that it is often necessary for the state to divide persons into classes for legitimate state purposes, but the distinction drawn between classes must not be arbitrary or unreasonable. . . . Such discrimination is unreasonable if the classification lacks a rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972).

*See also Bierkamp v. Rogers*, 293 N.W.2d 577, —— (Iowa 1980); *State v. Kyle*, 271 N.W.2d 689, 692 (Iowa 1978); *Kreft v. Fisher Aviation, Inc.*, 264 N.W.2d 297, 301 (Iowa 1978). There is a presumption of constitutionality, and one who asserts a statute is unconstitutional has the burden of proving beyond a reasonable doubt that the classification violates equal protection. *Bierkamp*, 293 N.W.2d at ——; *Hawkins*, 264 N.W.2d

at 729 (Iowa 1978); *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977).

■ Thus we reach the question whether under our de novo review section 598.1(2) violates constitutional equal protection guarantees. In *Gerk v. Gerk*, 259 Iowa 293, 299–300, 144 N.W.2d 104, 109 (1966), we pointed out the increasing importance which society places on education. The state has recognized this trend and has responded by maintaining three state universities (as well as other educational programs) at public expense. The substantial interest which the state has in this matter is attested to by the ever-increasing appropriations for educational purposes. *See* § 261.25, The Code 1979; 68th G.A., 1979 Sess., ch. 13, § 8. Clearly higher education is a matter of legitimate state interest.

■ However, this alone does not settle the issue raised. The further—and determinative—question is this: Does section 598.1(2) bear a rational relationship to this state interest and, if so, is the distinction drawn between the classes arbitrary or unreasonable?

■ The respondent argues that divorced parents are arbitrarily ordered to support their adult children in order to accomplish this state purpose while no similar requirement is imposed upon married parents. However, this does not necessarily make the classification arbitrary or unreasonable. The statute was designed to meet a specific and limited problem, one which the legislature could reasonably find exists only when a home is split by divorce. *Childers v. Childers*, 89 Wash.2d 592, 600–602, 575 P.2d 201, 207 (1978); R. Washburn, *Post-Majority Support: Oh Dad, Poor Dad*, 44 Temple L.Q. 319, 329 n. 55 (1971).

The legislature could find, too, that most parents who remain married to each other support their children through college years. *Making It: A Guide to Student Finances* 23 (A. Johnson ed. 1973); R. Freeman, *Crisis in College Finance? Time for New Solutions* 100 (1965); S. Harris, *A Statistical Portrait of Higher Education* 100, 114–23 (1972). On the other hand, even well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to support them as they would if the family unit had been preserved. *Childers v. Childers*, 89 Wash.2d 592, 602–604, 575 P.2d 201, 208 (1978).

■ The legislature could consider these facts and decide there is no necessity to statutorily require married parents to support their children while attending college but that such a requirement is necessary to further the state interest in the education of children of divorced parents. The differences in the circumstances between married and divorced parents establishes the necessity to discriminate between the classes. The statute is neither arbitrary nor unreasonable. *See Redmond v. Carter*, 247 N.W.2d 268, 271 (Iowa 1976).

■ In summary, we find the state has a legitimate interest in promoting higher education for its citizens. Section 598.1(2) is rationally related to protecting that interest and does so in a manner that is neither arbitrary nor unreasonable. It does not require such support in all cases. It allows the trial court, in its discretion, to award support of the children through college under the proper circumstances. Among the factors to be considered are the financial condition of the parent, ability of the child for college work, age of the child, and whether the child is self-sustaining or not. *See Sandler v. Sandler*, 165 N.W.2d 799, 802 (Iowa 1969); *Gerk v. Gerk*, 259 Iowa 293, 300, 144 N.W.2d 104, 109 (1966).

We hold section 598.1(2) does not violate the equal protection clauses of either the federal or state constitutions.

## II. CHILD SUPPORT.

■ The respondent next contends the trial court erred in ordering support to continue through college before the children were accepted into college. His argument is premised on that portion of the statute which states: "[Child support] may include support for a child who *is* between the ages of eighteen and twenty-two years who . . *is* in good faith, a full-time student in a

college . . . ." § 598.1(2), The Code (emphasis added). Respondent insists this language permits reliance on the statute only when the children are actually ready to enter college.

We do not agree with this restrictive reading of the statute. In the case of *In re Marriage of McFarland*, 239 N.W.2d 175, 180 (Iowa 1976), we modified a support decree to include the college expenses of the children who had not yet satisfied the requirements of the statute. We said:

Support for each daughter shall terminate when she reaches age 18 unless the conditions in section 598.1(2), The Code, relating to education are met, in which event the obligations shall continue for such child until she reaches the age of 22 so long as those conditions exist.

The trial court in the present case did no more than that which is permitted by *McFarland*. It would have been better if the trial court had spelled out that support would continue past the age of 18 only if the conditions of section 598.1(2) were met, as was done in *McFarland*. However, we believe this was implicit in the decree, and we so interpret it now.

■ The respondent next argues that the child support allowed by the trial court should not be approved because it is more than the petitioner requested. This does not make the award excessive or improper. We have held the rights of children are not controlled by the custodial parent. *Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973) (an agreement injurious to the best interests of a child will be held invalid for any purpose); *Gerk v. Gerk*, 259 Iowa 293, 298, 144 N.W.2d 104, 108 (1966) (father cannot be relieved from the duty to support his minor children by agreement with the mother). The trial court, in its sound discretion, may order child support in an amount greater than that requested by the custodial parent. *See* § 598.1(2).

We now consider the respondent's further argument that the child support is in fact excessive.

In evaluating a child support award, we use the criteria articulated in *In re Marriage of Zoellner*, 219 N.W.2d 517, 525 (Iowa 1974):

It has frequently been said by this court that in making a child support allowance each case is peculiarly dependent on its facts. Factors to be considered are parties' age, health, present earning capacity, future prospects, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, duration of the marriage, indebtedness of each or both, and any other relevant factors which might assist the trial court in reaching a just and equitable decision. [Citations omitted]. Stated somewhat differently, a child support allowance cannot be made or evaluated in a vacuum; the entire record must be examined. [Citations omitted]. The difficulty is not in the applicable legal principles but in determining what is justified under the facts presented. No two cases are alike and therefore precedents are of little value. [Citations omitted].

■ Respondent was, at the time of the decree, forty-four years old. Although not in the best of health, he is able to work steadily and has substantial earning capacity. Petitioner, too, is beset by physical ailments, particularly arthritis. She has a stable income but it amounts to a little more than one-half of his. In addition, petitioner has four children living with her while respondent has only one. The trial court award would give petitioner a total of $942 per month to support herself and four daughters. Respondent would have $512 to support himself and his son.

We have reviewed the record and have considered all of respondent's contentions, including his claim to credit for house payments which he made when petitioner refused to do so. We affirm all of the provisions of the decree relating to child support.

### III. PROPERTY DIVISION.

■ The respondent also challenges the property division. Factors to be considered

by the trial court, less the fault standard, are listed in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968). They include the living standards, age, contributions of the parties to the marriage, educational background, number and ages of the children, net worth of the property acquired, earning capacity, life expectancy, and ability to pay. These factors are not meant to arrive at mathematical precision. *In re Marriage of Andersen*, 243 N.W.2d 562, 564 (Iowa 1976); *In re Marriage of Briggs*, 225 N.W.2d 911, 912 (Iowa 1975).

We are disinclined to alter the trial court's conclusions. However, several matters cause us some concern. The record discloses petitioner inherited a parcel of real estate upon which one witness placed an off-hand value of $5,500. There was also evidence from which it appears probable that respondent has a one-ninth interest in his mother's estate, the principal asset of which is a 160-acre farm. Neither of these items was considered by the trial court in reaching a division of the property. Respondent claims he should have some interest in petitioner's real estate; petitioner has not cross-appealed concerning the trial court's failure to include respondent's inheritance in the settlement.

The record is very unsatisfactory on this score. Respondent was a reluctant and evasive witness when being questioned about his mother's estate. For some inexplicable reason, no value was put on his potential share nor was it ever clearly established he was a beneficiary under her will.

■ We have said property inherited by one spouse is a proper factor to be considered in arriving at a fair settlement. *Locke v. Locke*, 246 N.W.2d 246, 252–53 (Iowa 1976). However, in this case the litigants gave the trial court no basis upon which to make an equitable division. The trial court apparently decided to leave the inheritance of each undisturbed. This would appear to be to respondent's advantage, but since petitioner did not cross-appeal, she cannot (and does not) complain. It would be manifestly unfair to award

respondent an interest in petitioner's inheritance without giving her the same consideration concerning his.

■ Under the particular facts shown by this record, we approve the property settlement as made by the trial court. As a matter of interest, we point out a recently enacted statute to take effect July 1, 1980, deals with the treatment of inherited property in dissolution cases. *See* An Act Relating to Dissolution of Marriage, Annulment and Separate Maintenance Actions and Providing a Penalty, H.F. 2562, § 3 (to be codified in ch. 598, The Code).

IV. THE DECREE OF THE TRIAL COURT IS AFFIRMED.

AFFIRMED.