## In re the MARRIAGE OF Maria C. MISOL and Sinesio Misol.

### Upon the Petition of Maria C. Misol, Petitioner–Appellant,

### And Concerning

### Sinesio Misol, Respondent–Appellee.

No. 88–233.

Court of Appeals of Iowa.

June 15, 1989.

Tom Hyland of Hyland, Laden & Pearson, P.C., Des Moines, for petitioner-appellant.

Michael H. Figenshaw of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for respondent-appellee.

HABHAB, Judge.

Maria Misol appeals from provisions of the dissolution decree entered in the district court. She argues 1) the alimony award is inequitable, as is the amount ordered for child support; 2) Dr. Misol should be ordered to pay for the children's college education; and 3) she should be awarded appellate attorney fees.

The parties were married for twenty-two years. They have four children: Adrian, born June 6, 1966; Carmen, born December 13, 1968; Elizabeth, born November 2, 1970; and Helen, born December 18, 1976. Adrian and Carmen presently attend college. Sinesio is an orthopedic surgeon. His gross earnings in 1986 were approximately $330,000. Maria has a degree in journalism. She has not worked outside the marriage except for occasional work in political campaigns and periodic work in a lab at the University of Iowa. She has no present plans to return to the work force.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties in this case. *In re*

*Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

Maria argues the award made to her in the form of alimony is inadequate. She testified she requires $5,700 monthly to provide for herself and the children. The district court awarded her $3,500 monthly and $600 per month per child under the age of eighteen in child support. Two children qualified for child support at trial time. Prior to trial, Maria was receiving $4,500 per month temporary support from Sinesio.

■ The term "alimony" generally means an allowance for spousal support and is distinguishable from property division. *Brin v. Brin*, 240 Iowa 659, 651, 37 N.W.2d 261, 262 (1949). It is an allowance to the spouse in lieu of the legal obligation for support. *In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). It is not an absolute right. *In re Marriage of Maskel*, 225 N.W.2d 115, 120 (Iowa 1975). Moreover, once entered it survives the marriage. As the supreme court stated:

> When the court awards alimony, however, it refuses to wipe clean the marital slate. The court determines, instead, the husband has a continuing support obligation and the lots of the parties are to this extent still bound together. The reach of that obligation may vary with the financial fates of the parties, but the obligation has been created and it survives the marriage.

*In re Marriage of Carlson*, 338 N.W.2d 136, 140 (Iowa 1983).

■ The adequacy of the alimony awarded to Maria cannot be considered in a vacuum, separate from any other considerations. Instead, we must also look to the result of the property division. "Property division and alimony must be considered together in evaluating their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another." *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984); *In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976).

■ The assets awarded to Maria amount to a net total in excess of $700,000.

Nearly one-half of this amount is represented by a 50 percent share of Sinesio's profit sharing trust account. As of September 14, 1987, Maria's 50 percent share was valued at $363,328.

The remaining assets awarded to Maria represent a net total value in excess of $336,000 and included a home valued at $160,000 (with a mortgage of $29,000); household goods and paintings valued at $22,260; 800 shares of Rubbermaid stock valued at $24,000; a savings account in a Spanish bank worth $58,450; a tax exempt bond worth $26,500; two pieces of property in Spain worth $35,000; jewelry valued at more than $11,000; an automobile valued at $12,800; and two individual retirement accounts, other stock, and another automobile. Dr. Misol was awarded assets having nearly the same total value.

Wayne Stevenson, the Certified Public Accountant who performs the accounting work for the profit sharing trust, outlined several options which Maria could pursue with her one-half of the profit sharing trust account. She can immediately withdraw her entire share of the account, calculated at $373,800. After payment of taxes and a penalty for early withdrawal, she would have $205,000 left to invest, a capital sum which, if invested at 10 percent, would produce income in excess of $1,700 per month and at 9 percent would produce income of $1,537 per month.

In the alternative, she could withdraw $181,000 from the account immediately, giving her a net sum of $100,000 to invest. The remaining balance in her share of the account, according to Mr. Stevenson, would grow to approximately $1,000,000 by the time Maria reaches age fifty-nine, at which time she could make withdrawals from the account without incurring an early withdrawal penalty. Meanwhile, the net $100,000 of her withdrawal would be available to Maria to invest for the production of additional income or to use as she sees fit. As a third option, Maria could leave her entire one-half of the account untouched. If she pursued this course, at the age of fifty-nine, according to Mr. Stevenson, she would have almost $1.9 million available

for her withdrawal without incurring penalties.

Mr. Stevenson's tables show with the income available to Maria from alimony and child support, based on $3,500 per month alimony and $500 per child per month in child support plus $693 per month income from the stock and bonds received as part of the property settlement, but without any consideration of the impact of the profit sharing plan, Maria's monthly income would be $5,193 ($4,469 after taxes). If she withdrew sufficient funds from the pension and profit sharing plan to give her an additional $100,000 to invest immediately, her monthly income after taxes would be $5,002. If she withdrew her entire share of the profit sharing plan immediately and invested it at 10 percent, she would receive monthly income of $6,906 before taxes, or $5,527 after taxes. Thus, by withdrawing her share of the profit sharing plan and investing it, and by combining that income with her alimony, child support, and the income from her other investable assets (but without touching any of the underlying principal), Maria could reasonably anticipate an annual income of nearly $82,878 before taxes, $66,331 after taxes.

As we stated in *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa App. 1983):

> The equitable principles that we have recognized and enforced in the past require, in dissolution cases, that the spouse with the lesser earning capacity is entitled to be supported, for a reasonable time, in a manner as closely resembling the standards existing during the marriage as possible, to the extent that that is possible without destroying the right of the party providing the income to enjoy at least a comparable standard of living as well. But once the dependent spouse's standard of living is assured, there is no reason, in equity, for the supporting spouse to provide still more. On the contrary, as a matter of public policy, we believe that it is not desirable to do so; and we are convinced also that such an approach would be inequitable as

well. Those who possess valuable skills are recompensed by society for the efforts they put forth. The imposition of an onerous burden diminishes the incentive of otherwise productive individuals to spend their time and energy in useful pursuits. Whether an individual is a neurosurgeon or in a high-paid profession, he is entitled to enjoy the rewards of his labors.

Thus, we conclude in the instant case that there was no inequity in the trial court's determination that the petitioner should receive $48,000 per year in permanent alimony, even if that leaves the respondent a surplus considerably above $48,000 per year for his own use.

We determine the amount of alimony awarded by the trial court to be sufficient.

Maria also contends the amount of child support is inadequate and that further, Sinesio should be ordered to pay for the children's college educations. Sinesio counters by arguing the children have accumulated sufficient funds to be able to afford college in their own right. The children have the following amounts held in their names:

| Adrian | $109,225 |
|---|---|
| Carmen | 87,340 |
| Elizabeth | 87,545 |
| Helen | 87,676 |

An award of college expenses is clearly discretionary and is not required in all cases. *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980). If the child is self-sustaining, as clearly these four children are, support towards college expenses is not mandatory. *See In re Marriage of Hoak*, 364 N.W.2d 185, 191 (Iowa 1985) (Where support payments were ordered terminated on the first day after the child reaches eighteen years of age, unless the child has not graduated from high school and is a full-time student. In any event support was to terminate after the child reached age nineteen. Support payments were to also terminate on any month following the death of the child, the child's marriage, or the date the child is otherwise considered emancipated. The supreme court further provided, "no support is provided beyond this time since the custodial

property previously referred to [that had a value of $360,000] can be used for their support beyond this period.").

We find these amounts presently in the possession of the Misol children to be gifts intended by their father to be used towards higher education. We further determine that the funds and the income therefrom must be considered in assessing the children's needs. *In re Marriage of Lieberman,* 426 N.W.2d 683, 685 (Iowa App. 1988). When we review the record we agree with the trial court the children have sufficient funds to pay their own college expenses. We accordingly affirm the district court in this regard. We also affirm the trial court's award of child support.

■ Maria finally argues she should be awarded all reasonable and necessary appellate attorney fees and costs. Attorney fees are not a matter of right, but rest within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App. 1987). Without directing how much petitioner's attorneys may charge, we order respondent to pay $5,000 of Maria's appellate attorney fees and costs.

AFFIRMED.

All Judges concur except
OXBERGER, C.J., who dissents.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. I concur with all of the majority decision except the issue regarding college expenses. The majority states: "If the child is self-sustaining, as clearly these four children are, support towards college expenses is not mandatory." See *In re Marriage of Hoak,* 364 N.W.2d 185, 191 (Iowa 1985).

In *Hoak,* the court did not address the college expense issue because Mrs. Hoak did not raise the issue. The court did address the issue of whether self-sustaining children should receive child support during their minority. At page 191 of 364 N.W.2d the *Hoak* court said:

> The children's financial position should not be altered simply because their parents have dissolved their marriage. If

the dissolution had not occurred, the children would have continued to be supported by their parents, and the gifted assets would not have been used for their support. The parents have an obligation to support their children which is not mitigated by gifts to the children prior to the divorce.

I do not see any reason to apply the above *Hoak* rule to child support prior to 18 and not apply it after 18. The legislature has decreed if the children attend college until the age of 22, divorced parents have an obligation to support them. I would apply the *Hoak* rule to college expenses.

The focus then becomes when the children's fund was created, was its purpose to provide for the children's college expenses. Sinesio testified it was, and Maria testified it was not. The trial court did not address the issue, so we do not have its superior vantage point to determine credibility.

I would find that the evidence is lacking as to the contemporaneous intent. Sinesio's trial testimony was self-serving and not persuasive. I believe the intent was to provide the parents tax advantages primarily and secondarily give the children funds to start adult life. I see no evidence that contemporary with the giving of the gift the parents intended it to be used for college.

I would require Sinesio to pay two-thirds of the college expenses. I would limit those expenses to the cost of an Iowa resident to attend one of the public universities. Those costs should be board, room, tuition and books. The children should have the choice as what school to attend, but expenses above those provided above should be borne by them.