# IN THE SUPREME COURT OF IOWA

No. 11–0325

Filed April 27, 2012

IN RE THE MARRIAGE OF ARLEEN
MARIE VAUGHAN AND PHILIP
JAMES VAUGHAN,

Upon the Petition of
**ARLEEN MARIE WHITE-VAUGHAN,**

Appellee,

And Concerning,
**PHILIP JAMES VAUGHAN,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

On further review, appellant asserts the district court and court of appeals erred in awarding the statutory maximum postsecondary education subsidy under Iowa Code section 598.21F (2011). **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

Jeffrey E. Clements, West Union, for appellant.

Jennifer A. Clemens-Conlon of Clemens, Walters, Conlon & Meyer, L.L.P., Dubuque, for appellee.

**APPEL, Justice.**

In this family law case, we are asked to determine whether good cause exists for ordering a parent to pay a postsecondary education subsidy pursuant to Iowa Code section 598.21F (2011) and, if so, in what amount. The district court ordered both parents to pay the statutory maximum of one-third of the remaining cost of the child's college education at Iowa State University. The father appealed. The court of appeals, over a dissent, affirmed the district court. We granted further review. We affirm the determination that good cause exists for payment of a modest postsecondary education subsidy, but reduce the amount awarded by the district court.

## I. Factual and Procedural Background.

Philip Vaughan and Arleen Wentworth (formerly Arleen White-Vaughan) were married in 1990 but separated the following year. In early 1992, Arleen gave birth to the couple's only child, Allison. The parties divorced. The divorce decree awarded custody of Allison to Arleen and required Philip to pay child support of $282 per month. The decree ordered Philip to continue paying child support until Allison turned twenty-two if Allison "continues a course of higher education under Section 598.1(2), Code of Iowa 1991." The decree was later modified to raise Philip's child support obligation to $480 per month.

Arleen subsequently remarried. Arleen's second husband was the general manager of Dubuque Greyhound Park until his retirement in 2008. Philip also remarried. Philip and his second wife had three children but were subsequently divorced as well.

Philip initiated the present proceeding, asserting that because of a change in law, his child support obligation terminated when Allison reached eighteen. Arleen answered and filed a cross-petition, asking that

Philip be required to pay the statutory maximum of postsecondary education subsidy under Iowa Code section 598.21F.

At trial, the parties stipulated that under current law, Philip was no longer required to pay child support. Further, Arleen stipulated that she would provide the maximum postsecondary education subsidy to Allison. As a result, the litigation focused on whether the court should order Philip to also pay a postsecondary education subsidy and, if so, in what amount.

Most of the testimony offered at trial related to the question of whether Allison had repudiated her father which, if true, would relieve Philip of any postsecondary education obligation. *See* Iowa Code § 598.21F(4).

Evidence related to the financial status of Arleen and Philip was presented mostly in the form of stipulated exhibits. When Philip attempted at trial to inquire further into the financial status of Arleen, Arleen objected on the ground that because she agreed to pay the maximum allowable subsidy, further exploration of her financial status was irrelevant. The objection was sustained, and the evidentiary issue has not been challenged on this appeal.

Nonetheless, the evidence established that Arleen, along with her husband, lives debt free in a $200,000 home. Arleen and her husband have a joint investment account, the balance of which exceeds $100,000. In addition, Arleen and her husband have approximately $200,000 in various bank accounts. Arleen has no car loan or credit card debt. Arleen earns $28,000 annually. The record did not establish Arleen's husband's retirement income.

With respect to Philip, the record established that he is required to pay his second wife $750 per month for child support. In addition to

child support payments, Philip pays $702 per month for his primary mortgage. Philip spends an additional $664 each month on a second mortgage, which financed, among other things, his two vehicles, a 1987 Harley Davidson motorcycle worth $9000 and a 2005 Chevrolet pickup valued at $14,000. Philip has $17,000 in credit card debt, which requires him to spend $380 each month. About $7000 of this debt was related to home improvements. One hundred dollars is also deducted from Philip's paychecks each month for health insurance. Further, Philip reports that he spends $500 each month on utilities and phone services, $25 each month for clothing, $300 each month for food and meals, and $260 each month for transportation and car expenses. Philip's documented monthly expenses total $3681.

Philip works at Kregel Farms in Garnavillo, Iowa. In 2009, Philip's gross income was approximately $56,600. About $11,400 is deducted from Philip's income each year for taxes, leaving an after tax income of $45,200. Thus, Philip is left with $3767 each month to pay his monthly expenses. Based on Philip's financial disclosures, his cash flow is thus $86 per month.

Philip has some equity in his home, which is worth about $120,000, but his home equity is offset by his credit card debt. Philip's net worth is approximately $8500.

The record further established that at age eighteen, Allison enrolled at Iowa State University. The evidence established that the cost of educating Allison at ISU was $22,822 per year, which includes summer classes. Although she applied for financial assistance, Allison did not receive any scholarship money to pay for her college education although the testimony indicated that Allison received a form indicating that she could borrow money in an unspecified amount. Allison works

part-time at JC Penney in Dubuque about once a month and during breaks. Allison earned a 3.42 GPA during her first semester at ISU.

Applying Iowa Code section 598.21F, the district court held good cause existed to order postsecondary education subsidies. The district court reasoned Allison's age and proven ability to succeed in college supported ordering a postsecondary education subsidy. The district court also noted that Allison was unable to support herself, despite her industriousness, and that both Philip and Arleen were capable of contributing toward Allison's postsecondary education.

Having determined that good cause existed for a postsecondary education subsidy, the district court then turned to the amount of subsidy to be paid by each parent. The district court determined that Allison could contribute $5000 each year to her education. Thus, the total education costs minus Allison's contribution equaled $17,822. The district court ordered Philip and Arleen to pay the statutorily prescribed maximum amount of one-third of the total cost of education, which came to $7607.33 annually or $633.94 monthly. The district court asserted that, although Arleen's financial condition was better than Philip's, Philip did own a motorcycle that required monthly payments. The district court concluded that "Philip's legal obligation under Iowa Code Section 598.21F [was] superior to [Philip's] desire to have a motorcycle in addition to his regular transportation." The district court denied any award of attorney fees. Philip appealed.

The court of appeals affirmed. The court of appeals agreed with the district court's analysis relating to the showing of good cause. The court also affirmed the district court's holding requiring Philip to pay $633.94 per month. The court of appeals explained that Philip has "a good income" and should therefore bear his proportional expenses of

assisting Allison with her college education. The court of appeals assessed costs one-half to each party. Philip filed an application for further review, which we granted.

## II. Standard of Review.

We review this equitable action de novo. *In re Marriage of Neff*, 675 N.W.2d 573, 577 (Iowa 2004).

## III. Discussion.

### A. Evolution of Postsecondary Education Subsidies in Iowa.

The question of whether parents were obligated to pay for the cost of postsecondary education as part of their child support obligations arising from divorce produced a division of authority among state courts. Some held that the child support obligation did not include postsecondary education. *See, e.g.*, *Morris v. Morris*, 171 N.E. 386, 387 (Ind. App. 1930); *Middlebury Coll. v. Chandler*, 16 Vt. 683 (1844). Others, noting the importance of a college education, extended the child support obligation to include support for postsecondary education. *See, e.g.*, *Esteb v. Esteb*, 244 P. 264, 267–68 (Wash. 1926).

In *Gerk v. Gerk*, 259 Iowa 293, 144 N.W.2d 104 (1966), this court held that a divorced parent may be required to pay for his or her child's postsecondary education as part of his or her support obligation in certain cases. We stated:

> What education, if any, should be classed as necessary for the parent's child must generally be determined in a proper case from all the facts and circumstances, consideration being given not only to the station of the minor in society but also to the progress of society and the attendant requirements on the citizen of today. Although earlier authorities have been considered to support a contrary view, the trend of recent authority is to the effect that under modern conditions and in proper cases, education beyond that provided in the common schools may be a necessary which a parent is obliged to provide for his child, and that a parent able to do so may be required to

> bear the expense of a college education for a child evincing an aptitude therefor.

*Gerk*, 259 Iowa at 300, 144 N.W.2d at 109 (citation and internal quotation marks omitted). We observed that the facts of each case are important and factors to be considered include: "the financial condition of the parent, the ability of the minor for college work, the age of the minor, whether the child is self sustaining or not, [and] the father's willingness to provide an education." *Id.*; *see also* Scott A. Hall, Note, *In the Best Interests of the Child and the State: A Call for Expansion of Iowa's Postsecondary Education Subsidy Law*, 57 Drake L. Rev. 235, 243–44 (2008) (discussing *Gerk*).

Cases following *Gerk* applied the multi-factored approach and considered the financial condition of the parent in determining the amount of education subsidy to be awarded. In *Sandler v. Sandler*, 165 N.W.2d 799, 802 (Iowa 1969), we explained, "It is the duty and responsibility of both parents to furnish financial assistance for higher education in such an amount as their financial condition will permit." *See also Beasley v. Beasley*, 159 N.W.2d 449, 452 (Iowa 1968) (financial condition of parent relevant to determine amount of education subsidy).

When the age of majority lowered to eighteen, however, the question arose whether the obligation to provide postsecondary education support survived the change in law. *See* Kathleen Conrey Horan, *Postminority Support for College Education—A Legally Enforceable Obligation in Divorce Proceedings?*, 20 Fam. L.Q. 589, 590–91 (1987). The general assembly responded by amending the definition of "support" in Iowa Code section 598.1 (1973). 1972 Iowa Acts ch. 1027, § 48 (codified at Iowa Code § 598.1(2) (1973)). As defined in the 1973 Code, "support" included obligations for a child who was "in good faith, a full-

time student in a college, university, or area school; or has been accepted for admission to a college, university, or area school and the next regular term has not yet begun." Iowa Code § 598.1(2) (1973). The 1972 amendment reflected *Gerk* and its progeny in that divorced parents were required to pay for their children's postsecondary education in the form of child support. In *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980), this court upheld the constitutionality of the 1972 amendment, noting that "even well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to support them as they would if the family unit had been preserved."

In 1997, the general assembly took a new approach which restricted and limited the postsecondary education obligation of parents. The general assembly excluded postsecondary education support from the definition of "support" in the Iowa Code and promulgated a new section dealing with what it termed a "postsecondary education subsidy." 1997 Iowa Acts ch. 175, §§ 185, 190 (codified at Iowa Code §§ 598.1(8), .21(5A) (Supp. 1997)). The 1997 legislation provides the current statutory basis for requiring divorced parents to provide funds for a child's postsecondary education.

**B. Framework Established by Iowa Code Section 598.21F.** Under the legislature's new framework, a child must first qualify for a postsecondary education subsidy. In order to qualify, the child must be between the ages of eighteen and twenty-two and must have a demonstrated capacity to succeed in postsecondary education. *See* Iowa Code §§ 598.1(8), .21F (2011).

If the child is eligible, the district court "may" order a postsecondary education subsidy if "good cause" is shown. *Id.*

§ 598.21F(1). Iowa Code section 598.21F(2) provides the criteria for making a good cause determination. The section states:

> In determining whether good cause exists for ordering a postsecondary education subsidy, the court shall consider the age of the child, the ability of the child relative to postsecondary education, the child's financial resources, whether the child is self-sustaining, and the financial condition of each parent.

*Id.* § 598.21F(2).

Upon a showing of good cause, the Code provides a process for determining the amount of subsidy. First, the court determines the cost of postsecondary education based upon "the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree." *Id.* § 598.21F(2)(*a*). Next, the court is to determine the amount, if any, the child may reasonably be expected to contribute, considering the child's financial resources, the availability of financial aid such as scholarships, grants, or student loans, and the ability of the child to earn income while attending school. *Id.* § 598.21F(2)(*b*). Third, the court is to deduct the child's expected contribution from the cost of postsecondary education to arrive at a figure for the "remaining cost" of the postsecondary education. *Id.* § 598.21F(*c*).

Once the remaining cost has been determined, the statute directs the court to apportion the responsibility of the remaining cost to each parent. *Id.* The statute, however, explicitly caps the amount apportioned to each parent to no more than thirty-three and one-third percent of the total cost of the child's postsecondary education at a state institution. *Id.*

**C. Caselaw Under Iowa Code Chapter 598.21F.** We have been called upon to interpret Iowa Code chapter 598.21F on several occasions. Two cases are particularly germane to the issues raised in this appeal.

In *In re Marriage of Longman*, 619 N.W.2d 369, 369 (Iowa 2000), we considered whether a parent's financial condition was sufficient to support a twenty-percent allocation of the remaining costs of education of two children. The father noted that the mother in this case had monthly after tax income of $1400 plus a child support payment of $374 per month. *Longman*, 619 N.W.2d at 370. The father also noted the mother's monthly expenses totaled $1416, thereby resulting in a positive cash flow of $358 per month. *Id.* Accepting this cash flow figure, we noted that the mother was required to pay for expenses including clothing, home maintenance, auto maintenance and repair, and medical bill copayments. *Id.* at 370–71. We concluded that such financial resources were insufficient to justify imposition upon her of any college expenses incurred by the children. *Id.* at 371. Among other things, we emphasized that a parent is not required to make the same amount of parental sacrifice toward assisting in the college education of a child as in providing subsistence support for minor children. *Id.*

We also considered whether a person of limited means should be ordered to provide a postsecondary education subsidy in *Neff*. The father, Robert, who had remarried and shared living expenses with an employed wife, had disposable income of $12,497 with his only assets being a 1989 Chevrolet truck with 174,000 miles, a bank account of $130, and furniture worth $50. *Neff*, 675 N.W.2d at 579. We concluded under the facts that there was good cause to impose a "modest" postsecondary education subsidy on each parent. *Id.* We stated:

> We cannot construe the statute to require these particular parents to pay more than a modest share, even if it means the children will not have sufficient funds to complete college in the traditional four years or without working or borrowing.

*Id.* Based on the evidence in the record, we concluded Robert should pay a postsecondary education subsidy in the amount of $300 per year. *Id.* at 580.

In *Neff,* it is not entirely clear whether "good cause" or the subsequent "apportion[ment] . . . for the remaining cost" is circumscribed by a parent's financial ability. The "good cause" provision allows consideration of a parent's financial condition as one of the criteria in making the determination, but the statute does not expressly provide for a finding of good cause for only a modest subsidy. *See* Iowa Code § 598.21F(2). Once good cause has been found, the statute provides that the court "shall apportion" the educational costs remaining after subtracting the expected contribution of the student. *Id.* § 598.21F(2)(*b*). While there is a cap of one-third of the total educational costs, there is no language expressly indicating that the allocation may be limited by financial hardship that would result. We conclude that the best reading of *Neff* is that the "good cause" requirement of Iowa Code section 598.21F(2) is subject to an implied limitation preventing its extension to situations in which the postsecondary education subsidy would cause undue financial hardship on the parent.

**D. Application of Iowa Code Section 598.21F.** With this backdrop in mind, we proceed to the questions presented in this case. There is no question that Allison is eligible for the postsecondary education subsidy. She is nineteen years old and doing well in college. Philip argues that his financial condition precludes a finding of good cause to justify a postsecondary education subsidy and that, even if good

cause is evident, the district court's determination of the amount of subsidy is excessive given his financial condition.[1]

We first turn to the question of good cause. The statutory criteria for making the determination include the relative abilities of the parents and the child to finance the postsecondary education. In *Neff*, we held that even when parents have relatively few resources, there might be good cause for a "modest" educational subsidy. *Neff*, 675 N.W.2d at 579.

We believe that under *Neff*, there is good cause for a modest education subsidy to be paid by Philip. *See id.* Allison has limited financial resources as she received no financial aid to pay for tuition or other college expenses. Although the statute directs that the availability of student loans is a factor to be considered in a child's contribution, the availability of student loans has not been raised by Philip and, as a result, the availability of such loans is not a factor in the determination of the contribution that may be made by Allison in this proceeding. *In re Marriage of Vannausdle*, 668 N.W.2d 885, 890 (Iowa 2003). Further, although Allison works part-time at JC Penney, we agree with the district court's conclusion that Allison is not self-sustaining. We do not quarrel with the district court's assessment that she can earn $5000 per year to contribute to her undergraduate education.

We must also consider the financial condition of Philip. He has a very modest net worth which is tied up primarily in home equity. His cash flow is very tight. There is nothing in the record that suggests he lives an extravagant lifestyle. He does own a motorcycle, apparently for recreational purposes, but even the liquidation of this asset would not

---

[1]Philip does not challenge on appeal the district court's finding that Allison did not repudiate her father so as to disqualify her from receiving a postsecondary education benefit under Iowa Code section 598.21F(4).

dramatically alter his financial outlook. Nonetheless, while Philip is entitled to the benefit of *Neff*, he must also bear its burden. We conclude that there is good cause to require Philip to provide a modest postsecondary education subsidy in this case.

In determining the amount of subsidy, we recognize that under *Longman*, we do not require the same amount of parental sacrifice for postsecondary education subsidies as we would for payment of child support. *Longman*, 619 N.W.2d at 371. Further, under *Neff*, a postsecondary education subsidy must not cause undue financial hardship on a parent. *Neff*, 675 N.W.2d at 579. Applying this legal framework to the facts and circumstances of this case, we conclude that Philip should pay a $150 per month postsecondary education subsidy to Allison to help defray the cost of her education.

### IV. Attorney Fees.

Philip and Arleen request appellate attorney fees. Assuming without deciding that attorney fees may be awarded in an action to determine postsecondary education subsidy obligations under Iowa Code section 598.36, *see In re Marriage of Rosenfeld*, 668 N.W.2d 840, 848–49 (Iowa 2003); *but see In re Marriage of Mullen-Funderburk*, 696 N.W.2d 607, 611 (Iowa 2005), in the exercise of our discretion we decline to award attorney fees.

### V. Conclusion.

For the above reasons, we order Philip to pay a postsecondary education subsidy in the amount of $150 per month to Allison pursuant to Iowa Code section 598.21F. We also hold that neither party is entitled to appellate attorneys' fees. We therefore vacate the decision of the court of appeals, affirm the judgment of the district court to the extent it finds good cause for Philip to pay a postsecondary education subsidy, but

reduce the amount from $633.94 per month to $150 per month.  Costs are assessed to Arleen.  The parties shall pay their own attorney fees.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**