# IN THE COURT OF APPEALS OF IOWA

No. 20-0780
Filed January 21, 2021


IN RE THE MARRIAGE OF JUSTIN WILLIAM CERWICK AND MACHELLE
LYNN CERWICK,

**Upon the Petition of**
**JUSTIN WILLIAM CERWICK,**
        Petitioner-Appellant,

**And Concerning**
**MACHELLE LYNN CERWICK, n/k/a MACHELLE LYNN PETERSON,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe,

Judge.


        A father appeals the modification order placing the parties' children in the

mother's physical care. **AFFIRMED.**


        Dani L. Eisentrager, Eagle Grove, for appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Considered by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

Justin Cerwick appeals the modification order placing the parties' children in the physical care of Machelle Peterson, formerly known as Machelle Cerwick. We find Machelle has shown a substantial change in circumstances and that she can minister more effectively to the children's best interests. We therefore affirm the modification of the physical care provision of the parties' dissolution decree. We order Justin to pay $5000 toward Machelle's appellate attorney fees. We affirm the decision of the district court.

## I.     Background Facts & Proceedings

Justin and Machelle were formerly married. They are the parents of three children—J.C., born in 2005; N.C., born in 2007; and S.C., born in 2010. A dissolution decree filed in 2012 gave the parties joint legal custody and joint physical care of the children. Justin appealed the physical care provision of the dissolution decree. *See In re Marriage of Cerwick*, No. 12-1188, 2013 WL 2370722, at *1 (Iowa Ct. App. May 30, 2013).[1] We found "the issue of joint physical care was not properly before the district court as neither party requested such an arrangement." *Id.* at *5. We determined the children should be placed in Justin's physical care, as he had been acting as the primary caretaker after the parties' separation and his home was "the environment most likely to foster the children's physical, mental, and social maturity."[2] *Id.*

---

[1] Machelle did not participate in the 2013 appeal.

[2] In general, the district court is better able to make a decision in these situations based on its ability to physically observe the parties. Our supreme court has stated:

> A trial court deciding dissolution cases is greatly helped in making a
> wise decision about the parties by listening to them and watching

The case was remanded to the district court for a determination of visitation and child support. *Id.* The district court granted Machelle visitation on alternating weekends, alternating Wednesday evenings, alternating holidays, and three weeks during the summer. Machelle was ordered to pay child support of $449 per month.

On January 11, 2019, Machelle filed a petition for modification, claiming there had been a substantial change in circumstances as Justin was not adequately supervising the children and was not meeting their educational needs. Machelle asked to have the children placed in her physical care. In September 2019, before the trial on the modification petition, allegations arose that Justin had problems with substance abuse. The parties successfully moved to continue the trial to allow for a drug test. Justin did not submit to a drug test until December 5, which was negative for illegal substances.[3]

On January 14, 2020, Machelle filed a motion requesting that Justin be required to have a drug test. She stated the request was based on Justin's behavior, living environment, physical appearance, and his history of drug use. Justin did not object to the test, and the court sustained the motion. A hair test was positive for marijuana metabolites, but a urine test on the same day was

---

them in person. In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (internal quotation marks omitted).

[3] Justin agreed to hair follicle testing in September 2019 but did not have sufficient hair on his body to complete the test.

negative.[4]  Justin lost about 100 pounds over a short period of time, which he attributed to a change in his diabetes medication.

At the modification hearing, Justin's former girlfriend, Abi, testified she and her son, T.D., lived with Justin for several months in 2017.  T.D. stated that during this time, when he was sixteen or seventeen years old, he and Justin would use methamphetamine once or twice a week at the home of Justin's cousin, Sharon.  Abi confronted Justin in March 2018 after T.D. told her about his drug use with Justin.  According to Abi, Justin stated, "Well, yeah, we did, but wouldn't you prefer it was me instead of some stranger?"  During the hearing, Justin denied using illegal drugs.  Sharon testified that she had a substance-abuse problem with methamphetamine.  She stated T.D. might have used methamphetamine at her house but stated she did not know of any occasion when Justin used methamphetamine.

Machelle alleged Justin was not meeting their children's educational needs.  J.C., who was fourteen years old, was failing two classes and did not have a good attitude about school.  N.C., who was twelve years old, was interested in school but was not always getting good grades.  S.C., who was ten years old, was doing a satisfactory job in school.  Justin testified he was in frequent contact with the children's teachers but was unable to name the teachers.  The children went to the paternal grandparents' home, where they did their homework before Justin picked them up when he was done with work.  Justin would review to see if the children

---

[4] Justin denied using marijuana.  He stated the test reflected his recent use of ibuprofen.

had completed their homework but did not help them with their homework. Machelle testified Justin would not inform her about the children's school activities.

Machelle was also concerned about Justin's mental health. Justin previously threatened to commit suicide; he did not deny making statements of this nature but stated he was joking. In addition, Justin told Machelle he wished she would die. Machelle testified Justin was very controlling and did not support her relationship with the children. One of the children testified Justin was "scary" when he got angry.[5]

Furthermore, there was an issue of whether Justin was meeting the children's medical needs. J.C. was prescribed medication for ADHD, but Justin permitted J.C. to quit taking it because "he doesn't like the way it makes him feel," although there were questions about J.C.'s ability to stay on task in school. Similarly, S.C. was prescribed medication and Justin testified "she's been going to school without the medication and she's been doing good."

After hearing the testimony during the modification hearing, the district court found Justin was not a credible witness. The court found Justin's "demeanor to be overbearing and his reasoning to be convoluted. His testimony was driven by the goal of retaining custody. He has limited insight into the predicament of his children and does not objectively understand their best interests." The court determined T.D. gave credible testimony about using methamphetamine with Justin in 2017.

---

[5] A further concern in the case were reports that Justin had used a paddle to discipline the children. Justin and the children agreed this practice stopped after the Iowa Department of Human Services investigated the reports.

Also, T.D.'s testimony was corroborated by the testimony of Abi. The court noted this period coincided with Justin's "sudden and dramatic weight loss."

The district court found there was a substantial change in circumstances, noting the children's poor performance in school and their mental-health needs. The court stated it had "serious concern for the children's mental health after hearing their testimony." The court found the children were under "great stress," were at "great risk," were "suffering," and "[t]heir school performance is declining." The court found Machelle "appears to have a better grasp of the emotional needs of her children. These needs are great, much a result of [Justin's] quirky personality and lack of introspection." The court concluded the children should be placed in Machelle's physical care. Justin was granted visitation and ordered to pay child support.[6] Justin now appeals the district court's decision.

## II.      Standard of Review

In this equitable action, our review is de novo. *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012). We examine the entire record and adjudicate the issues anew. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give weight to the fact-findings of the district court, especially in determining the credibility of witnesses but are not bound by these findings. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). Our

---

[6] Following the court's ruling, Justin filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The court modified the visitation schedule and adjusted Justin's child support obligation. Machelle then filed a rule 1.904(2) motion based on the modifications. The court again adjusted the child support obligation. Justin filed a second rule 1.904(2) motion, which the court sustained. Justin's child support obligation was set at $816 per month.

overriding consideration is always the children's best interests. Iowa R. App. P. 6.904(3)(o).

### III. Discussion

Justin claims the district court should not have modified the parties' dissolution decree to place the children in Machelle's physical care.

The Iowa Supreme Court has stated:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Our controlling consideration is the best interests of the children. *In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000).

The children's less than optimal performance in school, especially that of J.C., was a substantial change in circumstances. In addition, Justin had not been giving J.C. and S.C. prescribed medication that may have enhanced their performance in school. The district court also found the children had mental-health needs, stating the court had "serious concern for the children's mental health after

hearing their testimony." Furthermore, there was evidence Justin did not support Machelle's relationship with the children. He did not keep her informed of school events and did not permit the children to speak to her on the telephone while they were in his care. In addition, there was evidence Justin had been using illegal drugs. Even if Justin was not using methamphetamine himself, he permitted T.D., who he knew had a substance-abuse problem, to live in the home with his children.

These are all changes that occurred after the dissolution decree was entered, were more or less permanent, and affected the welfare of the children. *See Harris*, 877 N.W.2d at 440. We conclude Machelle met her burden to show there was a substantial change in circumstances affecting the welfare of the children.

In order to modify physical care, a party must also show an ability to provide superior care for the child. *See In re Marriage of Malloy*, 687 N.W.2d 110, 114 (Iowa Ct. App. 2004). "Our focus is on the long-range best interests of the children." *In re Marriage of Grabill*, 414 N.W.2d 852, 853 (Iowa Ct. App. 1987). The primary goal is to place a child "in the environment most likely to bring that child to healthy physical, mental and social maturity." *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).

Machelle has shown she can better meet the children's educational needs. When Justin was incapacitated by a broken hip, Machelle worked with J.C. to improve his grades. Justin told Machelle her help was no longer needed when he felt better, and J.C.'s grades decreased again. Also, Justin was not giving J.C. and S.C. their prescribed medication. The court found Justin did not recognize or take steps to address the children's mental-health needs. The court found

Machelle "appears to have a better grasp of the emotional needs of her children." Moreover, Machelle was willing to let the children communicate with Justin while they were in her care. Machelle was able to support Justin's relationship with the children.

We conclude Machelle met her heavy burden to show she could minister more effectively to the children's best interests. *See Frederici*, 338 N.W.2d at 158. We determine the district court properly modified the parties' dissolution decree to place the children in Machelle's physical care.

## IV.    Appellate Attorney Fees

Justin and Machelle each seek attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006)). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.*

Justin's attorney fee affidavit shows he has fees of $5780, while Machelle's attorney fee affidavit shows fees of $12,250. The child support worksheets show the parties earn about the same amount of income. Justin was not successful on appeal. Based on these factors, we conclude Justin should pay his own attorney fees and pay a portion of Machelle's appellate attorney fees in the amount of $5000. Machelle shall be responsible for the remainder of her attorney fees for this appeal.

**AFFIRMED.**