# IN THE COURT OF APPEALS OF IOWA

No. 21-0251
Filed April 13, 2022

IN RE THE MARRIAGE OF STEPHEN TULLIS
AND CATHY TULLIS

Upon the Petition of
**STEPHEN TULLIS,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
CATHY TULLIS,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Wapello County, Greg Milani, Judge.


        A husband appeals the provision in the parties' dissolution decree requiring him to pay spousal support. The wife cross-appeals on the issue of trial attorney fees. **AFFIRMED ON BOTH APPEALS, AND REMANDED.**

        Michael O. Carpenter of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellant.

        Heather M. Simplot of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee.


        Considered by Tabor, P.J., Greer, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**CARR, Senior Judge.**

Stephen Tullis appeals the spousal support provision in the parties' dissolution decree. Cathy Tullis cross-appeals, asking for an increase in the award of trial attorney fees and for an award of appellate attorney fees. We affirm the district court's ruling requiring Stephen to pay $800.00 per month in spousal support. We also affirm the award of trial attorney fees. We find Stephen should contribute to Cathy's appellate fees in some amount and remand to the trial court to set them.

## I.      Background Facts & Proceedings

Stephen and Cathy were married in 1973. They have two adult children. Stephen worked for an implement manufacturer until he retired in 2002, at the age of forty-eight. He then began working for a local farmer and drove a truck. Cathy was not employed outside the home. Stephen and Cathy separated in August 2019, and Stephen filed a petition for dissolution of marriage on August 27.

For several years during the marriage, the parties lived in a double-wide trailer home (Milner home) on land owned by Cathy's parents. In 1998, Cathy inherited money from an aunt, and the parties used the funds to build a garage on the property. When Cathy's mother died in 2016, Cathy inherited the land where the Milner home was located, forty-five acres of adjoining farmland, a vehicle, and cash assets worth $182,000.00. They used about $38,000.00 of Cathy's inherited money to purchase a new trailer home (Alta Vista home) that was in a trailer park. Stephen and Cathy obtained a loan of $37,200.00, about the same amount as the cost of the Alta Vista home, and this was secured by a mortgage on the Milner Home. Their adult daughter and her children moved into the Milner Home. The

daughter does not pay any rent to live there. When the parties separated, Stephen remained in the Alta Vista home while Cathy moved in with her daughter and grandchildren in the Milner home.

Prior to the dissolution hearing, the parties entered into an agreement that Cathy would receive one-half of Stephen's retirement benefits from his prior employer, $645.00 per month. However, she would no longer received medical, prescription, dental, or vision benefits. Stephen receives one-half of the retirement benefits plus a Medicare Part B reimbursement, for a total of $910.38 per month.

The dissolution hearing was held on November 6, 2020. Stephen was then sixty-six years old. Stephen receives $1709.00 per month in social security retirement benefits. In addition, Stephen earns about $1000.00 per month for his farm and trucking work. Stephen was in good health. Cathy was sixty-seven years old at the time of the hearing. In addition to her lack of work history, Cathy has health problems that prevent her from entering the workforce. Cathy receives $907.50 per month in social security retirement benefits. She also earns $617.00 per month in farm rent.

In the dissolution decree, the court divided the parties' property, awarding Cathy the Milner home and Stephen the Alta Vista home. The farmland Cathy inherited was set aside to her. The court ordered Stephen to pay traditional spousal support of $800.00 per month. The court noted Cathy would need to maintain her own medical, dental, prescription drug, and optical insurance coverage and needed spousal support to help cover those expenses. The court ordered Stephen to pay $2000.00 for Cathy's trial attorney fees.

Stephen and Cathy each filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The court made minor adjustments to the terms of the dissolution decree but otherwise denied the motions. Stephen now appeals and Cathy cross-appeals the district court's decision.

## II. Standard of Review

In this equitable action, our review is de novo. *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012). We examine the entire record and adjudicate the issues anew. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give weight to the fact-findings of the district court, especially in determining the credibility of witnesses but are not bound by these findings. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). The district court's ruling will be disturbed "only when there has been a failure to do equity." *McDermott*, 827 N.W.2d at 676.

## III. Spousal Support

Stephen claims the district court improperly ordered him to pay spousal support. "The payment of alimony is not an absolute right; rather, whether a court awards alimony depends on the particular circumstances of each case." *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). Whether to award spousal support lies in the discretion of the district court. *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015); *Becker*, 756 N.W.2d at 825. "[W]e accord the trial court considerable latitude in making th[e] determination [of spousal support] and will disturb the ruling only when there has been a failure to do equity." *Olson*, 705 N.W.2d at 315 (citation omitted). In awarding spousal support, the district court is

required to consider the statutory factors enumerated in Iowa Code section 598.21A(1) (2019).[1]

The district court found "from its observation of the parties and considering the evidence surrounding the testimony that Cathy is more credible." Stephen challenges the court's credibility assessment. "We defer to the district court's credibility assessments of the parties." *In re Marriage of Gensley*, 777 N.W.2d 705, 717 (Iowa Ct. App. 2009). "The trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses than the appellate court, which is limited to a written record."

---

[1] The court considers the following factors:

    a. The length of the marriage.

    b. The age and physical and emotional health of the parties.

    c. The distribution of property made pursuant to section 598.21.

    d. The educational level of each party at the time of marriage and at the time the action is commenced.

    e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

    f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

    g. The tax consequences to each party.

    h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

    i. The provisions of an antenuptial agreement.

    j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

*In re Marriage of Heiar*, 954 N.W.2d 464, 469 (Iowa Ct. App. 2020). We accept the court's credibility determination.

Stephen does not challenge the property distribution, but he asserts the court awarded Cathy a greater amount of the marital property. He contends that, due to this inequity, he should not be required to pay spousal support. *See In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998) ("Property division and alimony should be considered together in evaluating their individual sufficiency."). We agree that the property division must be considered when evaluating the need for and amount of spousal support. As we note below, we do not agree this award was inequitable or that it militates against the trial court's award.

Stephen concedes that the allocation of property and debt was largely stipulated by the parties. On several assets, the parties also agreed to the value of the asset. On the assets where the court determined the value, the amount set by the court was within the range of evidence presented by the parties. "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). "Although our review is de novo, we will defer to the trial court when valuations are accompanied with supporting credibility findings or corroborating evidence." *In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999).

The valuations assigned by the district court are within the permissible range of the evidence and we do not disturb these valuations on appeal. *See In re Marriage of Driscoll*, 563 N.W.2d 640, 643 (Iowa Ct. App. 1997). After setting aside to Cathy the property she inherited, we find the division of property is

equitable. *See* Iowa Code § 598.21(6) (providing that generally inherited property is not subject to division). After setting off to Cathy her inherited property, the net award of marital property is substantially equal. We perceive no inequity in the property division. The trial court noted and considered Cathy's farm rental income in setting spousal support. We determine an adjustment in spousal support is not necessary to counterbalance any perceived inequity in the division of property.

Stephen also claims the award of spousal support should be decreased in recognition of the parties' modest lifestyle. He states Cathy does not need a great deal of spousal support in order to live the lifestyle she is accustomed to. "The court looks to the standard of living the parties had previously maintained as well as one spouse's relative ability to pay." *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa Ct. App. 1995).

The district court addressed this issue:

> The Court has also considered the fact that Steve has managed to continue to live his life with little negative financial consequences since the entry of the temporary spousal support order herein. Steve has been able to provide support to a friend without any reduction in his bank account or impact on his lifestyle. Cathy, on the other hand, rightfully feels that she has suffered a significant reduction in her standard of living during this same time period.

We agree with the district court's conclusions. After the parties' separated, Cathy was sleeping on the couch in a crowded home with the parties' daughter and grandchildren. She did not have a comparable standard of living to that enjoyed during the marriage. *See In re Marriage of Pazhoor*, ___ N.W.2d ___, ___, 2022 WL 815293, at *8 (Iowa 2022). We consider this factor in assessing Cathy's need for spousal support.

Additionally, Stephen contends the court improperly required him to pay more spousal support based on Cathy's "laissez-faire attitude about money," than he would have otherwise have been required to pay. We do not read the court's statement as supporting Stephen's argument. Nor do we accept Stephen's claims that Cathy could earn more money by charging the parties' daughter rent or selling land to the parties' son. We do not impute income to Cathy that she might realize by charging rent to the parties' daughter and grandchildren. We note an absence of evidence that Stephen is charging rent to the friend living with him.

After considering all of the factors in section 598.21A(1), we affirm the award of spousal support. Stephen has more income than Cathy. Furthermore, in the future, she will be responsible for a prescription drug, dental, and vision plan.

**IV.    Attorney Fees**

**A.**    Cathy requested that Stephen pay $6000.00 for her trial attorney fees. The trial court awarded her $2000.00. We review the district court's award of trial attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.*

The husband had a legal services insurance plan through his pension entitlement that paid his own fees. After accounting for spousal support, the parties' monthly income will be about the same. Also, the wife has her inherited property set off to her. We affirm the award of $2000.00 to Cathy for trial attorney fees.

**B.**    Cathy seeks attorney fees for this appeal. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage*

*of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *Okland*, 699 N.W.2d at 270).

Cathy requests $4500.00 in attorney fees for this appeal. She successfully defended the appeal challenging the alimony award, but was not successful in her cross appeal seeking more trial attorney fees. We think she is entitled to appellate fees in some amount. She has not filed an affidavit itemizing counsel fees. As a result, we are unable to determine the correct amount of fees. See *In re: Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). We remand to the trial court for this purpose.

We affirm the decision of the district court on Stephen's appeal and Cathy's cross-appeal. We remand to the trial court to set Cathy's appellate fees.

**AFFIRMED ON BOTH APPEALS, AND REMANDED.**