In re the MARRIAGE OF Mark William MOORE and Janet Jordan–Moore.

Upon the Petition of Mark William Moore, Petitioner–Appellant,

and

Concerning Janet Jordan–Moore n/k/a Janet Krengel, Respondent–Appellee.

No. 04–1505.

Court of Appeals of Iowa.

May 25, 2005.

**518**

Michael W. Kennedy of Kennedy, Cruise, Frey & Briscoe, L.L.P., Iowa City, for appellant.

Dorothy Dakin of Kruse & Dakin Law Offices, Boone, for appellee.

Heard by SACKETT, C.J., and HUITINK and VAITHESWARAN, JJ.

SACKETT, C.J.

Mark William Moore appeals, challenging an award of a postsecondary education subsidy the district court entered establishing an obligation for him to pay $4,000 a year towards expenses for his son Jonathan Moore. Mark contends (1) good cause did not exist to award the subsidy, (2) Jonathan failed to maintain the grade point average in his first year at college necessary to support a subsidy, (3) his financial condition was not considered in determining the amount of the subsidy, (4) the amount of the subsidy was not properly calculated, and (5) he should not have been ordered to pay $2,500 of Janet's attorney fees. We reverse and dismiss.

We review de novo. Iowa R.App. P. 6.4; *In re Marriage of Robbins,* 510 N.W.2d 844, 844 (Iowa 1994). We give weight to the district court's findings of fact, but we are not bound by them. Iowa R.App. P. 6.14(6)(*g* ).

The marriage of Mark and Janet Jordon–Moore was dissolved in 1989. Jonathan, born in February of 1985, was a product of the marriage. In the fall of 2003, Jonathan entered Iowa State University. Jonathan testified that before he did so he talked to his father about helping with his expenses and his father assured him he would assist financially. Mark did not help with Jonathan's expenses, and in December of 2003 Janet filed the application to modify the parties' dissolution decree to provide a college subsidy for Jonathan. The matter came on for trial on August 17, 2004. By that time Jonathan had completed his first year at Iowa State University and his grades were well below average.

There is no obligation at common law to support an adult child who is not under a disability. Rather, at common law a parent's obligation to support his or her child ends when the child becomes of age,

unless the child is physically or mentally unable to care for him or herself. *Johnson v. Louis*, 654 N.W.2d 886, 887 (Iowa 2002); *Davis v. Davis*, 246 Iowa 262, 266, 67 N.W.2d 566, 568 (1954); *Blachley v. Laba*, 63 Iowa 22, 23–24, 18 N.W. 658, 658 (1884). Therefore, in determining whether there is an obligation of support to the adult children here, we need look to the obligation, if any, created by the legislature.

■ Divorced parents can be ordered to provide defined financial support for their adult children until age twenty-two under Iowa Code section 598.21(5A) (2003). The obligation established by this section is limited to divorced parents because children of divorced parents have had the attributes of a legally recognized parental relationship taken from them by court decree and the benefit is a quid pro quo for the loss of stability resulting from the dissolution. *See Johnson*, 654 N.W.2d at 891; *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980). It does not apply to parents who are still married to each other or those who never married. *Johnson*, 654 N.W.2d at 891.

The issues here focus on the interpretation and application of the Iowa Code section above. This section is a part of the provisions relating to the disposition of property and support in a dissolution of marriage and permits a court to order either party to a divorce to subsidize the postsecondary educational expenses of a child if good cause is shown. *See also* Iowa Code § 598.1(8). The child must be between eighteen and twenty-two years of age and either regularly attend vocational-technical training, be a full-time college student, or be "accepted for admission to a college" for the next regular term. *Id.* The subsidy payment is known as a "postsecondary education subsidy." *Id.*

■ In considering Mark's obligation, if any, we look to the statute, any agreement he made, and any orders establishing support. In interpreting a statute, we look to its language, and if its meaning is clear, we are not permitted to search beyond its express terms. *State v. Nelson*, 329 N.W.2d 643, 646 (Iowa 1983).

The first issue we need to address is whether Jonathan qualifies for a subsidy. There has been no previous finding that he does qualify. Jonathan is a child of divorced parents who is unmarried and not yet twenty-two years of age, and at the time of trial was planning to enter his second year of study at Iowa State University. He qualifies under the statute as a person who can benefit. *See In re Marriage of Dolter*, 644 N.W.2d 370, 372 (Iowa Ct.App.2002). Yet our inquiry does not end there. *In re Marriage of Longman*, 619 N.W.2d 369, 370 (Iowa 2000).

■ Under section 598.21(5A) we must also determine if good cause exists to award a postsecondary education subsidy. *In re Marriage of Murphy*, 592 N.W.2d 681, 684 (Iowa 1999). To do so we must, among other things, assess the ability of Jonathan to complete postsecondary education and his actual financial needs. *Id.* This threshold issue must be resolved before the court goes to the next step of calculating and ordering the parties' contributions. *Id.*

To determine if good cause exists for a postsecondary education subsidy, we next need to consider Jonathan's postsecondary educational ability, financial resources, and whether he is self-sustaining. Iowa Code § 598.21(5A)(a); *Longman*, 619 N.W.2d at 370.

Mark argues good cause does not exist because Jonathan has failed to show he has the ability to pursue postsecondary education as illustrated by the low grade point average he received in his first two

semesters at Iowa State University. Mark also argues that because Jonathan failed to maintain a grade point in the median range or above during his first year at Iowa State University, section 598.21(5A)(d) results in a loss of any subsidy. This section requires a student to forward grade reports to each parent within ten days of their receipt and then provides in relevant part:

> Unless otherwise specified by the parties, a post-secondary education subsidy awarded by the Court shall terminate upon the child's completion of the first calendar year of course instruction *if the child fails to maintain a cumulative grade point average in the median range or above during the first calendar year.*

Iowa Code § 598.21(5A)(d) (emphasis supplied).

Jonathan's grade point average for the 2003–2004 academic year was 1.48. The cumulative grade point average for all Iowa State University freshmen in the College of Liberal Arts and Sciences for the fall of 2003 was 2.49 [1] and Jonathan's was 1.92. For the spring semester of 2004 the cumulative grade point was 2.60 [2] and Jonathan's was 1.17. Clearly Jonathan's grade point was well below average. His grade point went down the second semester, not up. He was to return to Iowa State University on academic probation.

The district court did not apply section 598.21(5A)(d) despite Jonathan's low grade point average, reasoning that the section did not apply because there was no existing order for a postsecondary education subsidy. Mark contends looking at Jonathan's grade point average and the statute,

we should determine that Jonathan does not have the ability to pursue secondary education and consequently should not qualify for a subsidy.

Janet contends section 598.21(5A)(d) should not be applied because there was not a subsidy in place. She contends Jonathan can do college work, and she points to the fact that Jonathan had excellent high school grades and ACT test scores. She notes Jonathan took seventeen and a half semester hours the first semester, eighteen the second, and he was distracted by living in a freshman male dorm, having a girlfriend with whom he spent a lot of time, and grief he experienced when his maternal grandfather died from cancer and his step-grandfather was diagnosed with cancer during the year.

■ The legislature, in imposing a secondary education subsidy only on divorced parents, wisely provided a mechanism in section 598.21(5A)(d) for these parents to monitor the academic performance of their children, and if the performance did not meet average expectations, terminate any statutory responsibility for the child's secondary education. The statute is specifically directed to performance, namely grades. Furthermore, it provides no exception for excuses for failure to perform nor does it allow leeway for a child who has evidenced the ability to perform satisfactorily in a secondary education setting but has failed to do so.

While we agree with the district court that section 598.21(5)(d) is couched in terms of terminating an award and until the award was entered there was not one to terminate [3] we do see the section as guidance of what the legislature intended

---

1. The grade point for men only was 2.30.

2. The grade for men only was 2.35.

3. However, a literal reading of the statute would suggest that once a subsidy was established section 598.21(5A)(d) provides for its termination. *In re Marriage of Longman,* 619 N.W.2d 369, 370 (Iowa 2000).

the courts to consider as "the ability of the child relative to postsecondary education." Jonathan's first year grades showed he does not have that ability—whether it is from lack of intelligence or effort. In determining whether good cause exists we also look to the financial condition of each parent.

■ Mark contends the district court erred in finding he was financially capable of paying $4,000 each academic year to Jonathan. Not each parent is required to provide a subsidy even if the other requirements are met. *In re Marriage of Longman*, 619 N.W.2d 369, 370 (Iowa 2000).

■ In making this assessment we consider Mark's wife's income. Janet advances and it is reasonable to consider the financial situation of Mark's wife but only as it relates to his overall financial condition. *See In re Marriage of Gehl*, 486 N.W.2d 284, 287 (Iowa 1992). In considering a parent's income for child support purposes we can consider a spouse's income, as it relates to the overall financial condition of the paying parent.

■ "We do not believe a parent is required to make the same amount of parental sacrifice toward assisting in the college education of a child that is required to provide subsistence support for minor children." *Longman*, 619 N.W.2d at 371. We also consider that Mark has an obligation with his current wife to support three minor children. The obligation to his minor children has a higher priority than his obligation to an adult child. *Longman*, 619 N.W.2d at 371. Mark has a very limited ability to contribute to Jonathan's education.

Mark makes about $37,000 per year as an employee of the Parking Department of the University of Iowa where he has worked for twenty-five years. He has few assets, and he and his wife have three children currently ages eleven, seven, and three. Mark's wife owns their home and reports income on their Iowa tax return of about $10,000 from writing and stock dividend. Though Mark's current wife is a trained physician, she apparently has health problems that seriously limit her ability to practice that profession and she works at it one week a year, presumably to keep her license current.

We consider Jonathan's poor performance when considered together with Mark's obligations to his minor children in determining no good cause exists to justify a postsecondary education subsidy and reverse the district court's finding to the contrary. Having determined there is no good cause for a subsidy, the amount of the subsidy is moot.

The district court also charged Mark with $2,500 in attorney fees which he challenges and Janet asks for attorney fees on appeal. We affirm the attorney fee award but award no appellate attorney fees.

**REVERSED AND DISMISSED.**