# IN THE COURT OF APPEALS OF IOWA

No. 21-0061
Filed July 20, 2022


IN RE THE MARRIAGE OF RYAN J. HEIN
AND CATHLEEN E. HEIN

Upon the Petition of
RYAN J. HEIN,
      Petitioner-Appellee,

And Concerning
CATHLEEN E. HEIN,
      Respondent-Appellant.
_____


Appeal from the Iowa District Court for Scott County, Mark R. Lawson,

Judge.


A party appeals from the modification of her dissolution decree. **AFFIRMED**

**AS MODIFIED AND REMANDED.**


Garth M. Carlson of Gomez May LLP, Davenport, for appellant.

Lynne C. Jasper, Bettendorf, for appellee.


Considered by Schumacher, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**GAMBLE, Senior Judge.**

Cathleen Hein appeals from a ruling modifying the decree dissolving her marriage to Ryan Hein. The ruling ordered Ryan provide a postsecondary education subsidy for their oldest child, P.H., and modified visitation and child support for their younger child, M.H. We affirm as modified.

Because this is an equitable action, our review is de novo. *In re Marriage of Garrels*, No. 18-1938, 2019 WL 5791029, at *1 (Iowa Ct. App. Nov. 6, 2019) (citing *In re Marriage of Vaughan,* 812 N.W.2d 688, 692 (Iowa 2012)). "We give weight to the fact findings of the district court but are not bound by these findings." *Id.*

**I. Post-Secondary Education Subsidy**

We first consider the postsecondary education subsidy. We begin with a brief recitation of relevant facts.

P.H. performed well academically in high school. She enrolled in Iowa State University (ISU) in the fall of 2019.[1] Around this time, P.H. only had limited contact with Ryan, and that contact focused on whether Ryan would provide her with financial assistance for college. Ryan had previously established a 529 account for P.H.[2] *See* I.R.C. § 529 (establishing tax-free educational accounts for college expenses). Ryan wanted P.H. to come to his home to discuss any financial support with him and his spouse. But P.H. did not want to go to Ryan's house to discuss finances with Ryan's spouse. So Ryan did not provide financial assistance.

---

[1] Cathleen filed this modification action seeking the postsecondary subsidy in September 2019.

[2] The account had a balance of roughly $17,000 at the time of trial.

For the 2019–2020 school year, P.H.'s maternal grandmother co-signed a loan for $9880. Cathleen also co-signed another loan for $3500. And P.H. worked at the food court ten hours per week making $11 per hour while on campus.[3] P.H. also received a $500 per semester scholarship for that school year.

During the 2020 summer break, P.H. was employed as a welder making $14 per hour working thirty-six hours per week.

P.H. decided to take online classes for the 2020–2021 school year so she could live with her mother and avoid paying room and board. Her tuition, books, and fees for the fall 2020 semester were $5790. And she anticipated the next semester would cost roughly the same amount. She also received more financial support in the form of grants and scholarships. In addition to the $500 per semester scholarship she already had, she received an additional $100 per semester in an educational opportunities grant, a Pell Grant for $3173 per semester, and a $925 grant per semester from ISU.

But P.H. does not know how much schooling will cost in the future because she would like to return to in-person classes if possible for a more traditional college experience.

The district court considered these facts, the parents' incomes,[4] and Iowa Code section 598.21F (2019) to determine whether it should award a subsidy. The court found good cause to order a postsecondary education subsidy for the 2020–2021 school year. *See* Iowa Code § 598.21F(1) (permitting the court to "order a

---

[3] ISU told students to not return to campus after the 2020 spring break due to the COVID-19 pandemic.

[4] Cathleen makes $24,210 per year and Ryan makes $108,854 per year.

postsecondary education subsidy if good cause is shown"). However, the court determined it could not award a subsidy for the 2019–2020 school year because it did not have evidence regarding the actual cost of attendance for that year. *See id.* § 598.21F(2)(a) (requiring the court to "determine the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses"); *In re Marriage of Larsen*, 912 N.W. 444, 451 (Iowa 2018) (stating the presumptive cost of attendance is that published by the educational institution pursuant to 20 U.S.C. § 1087). The court also found it could not award a subsidy for the 2019–2020 school year because P.H. never provided Ryan with her grades for the school year. *See* Iowa Code § 598.21F(5) ("The child shall forward, to each parent, reports of grades awarded at the completion of each academic session within ten days of receipts of reports."). For the 2020–2021 school year, the court ordered Ryan pay a $600 per semester subsidy either to P.H. or directly to ISU. With respect to future years, the court declined to determine the amount of any subsidy because there was too much uncertainty as to costs but retained jurisdiction to do so in the future.

With this backdrop we consider Cathleen's claims regarding the postsecondary education subsidy for P.H.[5] Cathleen argues Ryan should be

---

[5] In his appellee brief, Ryan argues the district court should not have awarded any postsecondary education subsidy. But Ryan did not file a cross-appeal, so we cannot grant him any relief. *See In re Marriage of Palmer*, No. 18-2220, 2019 WL 4298034, at *1 n.1 (Iowa Ct. App. Sept. 11, 2019); *see also In re Marriage of Novak*, 220 N.W.2d 592, 598 (Iowa 1974); *In re Marriage of Winegard*, 257 N.W.2d 609, 618 (Iowa 1977); *In re Marriage of Harris*, No. 12-0693, 2013 WL 541379, at *5 (Iowa Ct. App. Feb. 13, 2013).

required to pay one-third of the cost of attending ISU and the court essentially punished P.H. for having a poor relationship with Ryan by ordering a lower subsidy.

But we do not read the district court's order as punishing P.H. for her relationship with her father.  In fact, we note the district court afforded a "certain amount of latitude" to P.H. and recognized she "has suffered adverse effects from her parent's divorce."  However, the district court incorrectly applied section 598.21F(5) when it determined it could not award a subsidy for the 2019–2020 school year because P.H. did not provide Ryan with her grades.  At that time, no there was no subsidy in place and section 598.21F(5) provides a mechanism to terminate an established subsidy.  *See In re Marriage of Moore*, 702 N.W.2d 517, 520–21 (Iowa Ct. App. 2005).  So the district court should not have used P.H.'s failure to provide Ryan with her grades as a basis to deny a subsidy.  However, that does not end our inquiry.

Rather, with respect to costs associated with the 2019–2020 school year, Cathleen failed to present the required evidence for the court to determine costs for that year—a necessary requirement for the court to be able to order a subsidy. *See id.* § 598.21F(2)(a); *Larsen*, 912 N.W.2d at 449 ("First the court must ascertain 'the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses.'" (quoting Iowa Code § 598.21F(2)(a))).  While P.H. testified concerning her recollection of her expenses, Cathleen did not introduce the published cost of attending ISU.  *See Larsen*, 912 N.W.2d at 450 ("We believe the cost of attendance as published by each institution pursuant to 20 U.S.C. § 1087*ll*

is presumed to be the reasonable and necessary cost of attending an in-state public institution for a course of instruction when a court makes its calculation under Iowa Code section 598.21F(2)(a).").

However, Cathleen argues specific financial figures identifying the cost of attendance are not required and points us to *Larsen*. *See id.* But she misinterprets *Larsen*. In *Larsen*, the parents actually disagreed over what specific expenditures go into the cost of attendance.[6] *Id.* at 449. In response, our supreme court held "arguing over specific costs is unnecessary" because the cost of attendance is determined by the educational institution itself. *Id.* at 449–50 (explaining public universities provide a list of specific expenses in accordance with federal requirements). And the petitioning parent in *Larsen* provided the court with documentation provided by the school showing the cost of attendance. *Id.* at 448. Conversely, Cathleen provided no evidence from ISU about the cost of attendance for the 2019–2020 school year. So the district court could not complete the first step required to order a subsidy. Therefore we take no issue with the district court declining to award a subsidy for the 2019–2020 school year.[7]

---

[6] Specifically, the parents disagreed as to whether sorority dues should be included in the cost of attendance. *Larsen*, 912 N.W.2d at 450.

[7] Cathleen's brief urges us to "simply award the website cost of a full-time student at Iowa State less any grants or scholarships and then take one-third of that and have Ryan pay that to the child or the school." However, there is no website in the record, and Cathleen does not specify to what website is referring. We note *Larsen* provided a website for the Office of Student Financial Aid at ISU. 912 N.W.2d at 450. But that website shows costs for the current school year and does not provide costs for prior years. And the corresponding permalink in *Larsen* shows the costs for the 2017–2018 and 2018–2019 school years, which are not at issue in this case. Moreover, it was Cathleen's obligation to provide the district court with this information. It is not within this court's purview to seek out this information on its own contrary to Cathleen's suggestion.

With respect to the 2020–2021 school year, the court credited P.H.'s testimony that the cost of attendance was $5790 for the fall semester and would be similar for the spring semester. However, *Larsen* made clear the presumptive cost is to be determined by the university. *Id.* at 450. So we think the district court should not have awarded a postsecondary subsidy for this school year without that information. However, Ryan did not file a cross-appeal to challenge this award. So we do not disturb it.

Cathleen also argues that the court should have awarded a subsidy for future years rather than making her come back again the following year. While we understand courts sometimes award subsidies for multiple years at a time, *see In re Marriage of Neff*, 675 N.W.2d 573, 581 (Iowa 2004) (awarding subsidies "so long as each child is between the ages of eighteen and twenty-two"), we do not think that would be practical in this instance. P.H. testified she has no idea what her expenses will be in future years because she does not know if she will be attending classes on-campus or remotely. The difference in cost between these two situations is likely to be significant because one would require her to move out of her mother's home during the school year and secure housing in Ames. So we

---

We recognize in *In re Marriage of Seely*, No. 17-0777, 2018 WL 2725324, at *4 (Iowa Ct. App. June 6, 2018), we remanded to the district court to recalculate the postsecondary subsidy in accordance with *Larsen*. But because *Seely* was filed just weeks after *Larsen*, the parties did not have the benefit of *Larsen* while in the district court. Conversely, the parties in this case had the benefit of *Larsen* when they presented their cases to the district court. Because of this distinction, we think Cathleen already had her opportunity to provide the cost of attendance as determined by ISU to the district court and should have known to do so. So we do not remand as we did in *Seely*.

think the district court was correct to decline to order future subsidies because it had no idea of P.H.'s future costs.

In conclusion, Cathleen failed to prove the presumptive cost of attending ISU for the 2019-2020 school year. She also failed to prove the presumptive cost of attendance for the 2020–2021 school year. However, because Ryan did not cross-appeal a subsidy based on L.H.'s testimony, we do not disturb the subsidy awarded for the 2020–2021 school year. We decline to award subsidies for future years on this record.

## II. Visitation

We now turn to Cathleen's claims regarding the modification of visitation for M.H. Ryan had requested modification of the visitation schedule. The district court relied on changes to Ryan's work schedule,[8] as well as Cathleen's historical lack of flexibility with respect to visitation, to justify modifying the summer visitation schedule for M.H. Under the modified decree, the parties alternate care of M.H. every two weeks beginning on the first full day of M.H.'s summer break and required the parties to split transportation obligations so the receiving parent is responsible for transportation. Cathleen contends the district court should not have modified visitation because the court granted Ryan more visitation time than he requested at trial and a change in visitation is not in M.H.'s best interest. She also complains that Ryan does not allow telephone calls between herself and M.H. when M.H. is in his care.

---

[8]Ryan now works a standard 7:00 a.m. to 4:00 p.m. work shift Monday through Friday making it easier for him to spend time with M.H.

First, we address Cathleen's concern that the court gave Ryan more visitation than he requested. True, Ryan did not specifically request alternating two-week visitation periods over the summer at trial. But he did make this request in a proposed visitation schedule post-trial after the court requested the parties submit proposed schedules. So Ryan did actually request the summer visitation granted.

Next, we consider whether the new visitation schedule is warranted. "A parent seeking to modify visitation must only establish 'that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the child[ ].'" *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa 2009) (citation omitted). We agree with the district court that Ryan's work schedule change and Cathleen's inflexibility amount to material changes in circumstances to warrant modification of visitation. Moreover, we think the alternating two-week summer schedule is in M.H.'s best interest. M.H. has expressed a desire to spend more time with Ryan and additional summer visitation would provide M.H. with that additional father-child time she wants and needs. And these parents have had difficulty scheduling their respective summer vacations in the past. But with this schedule, they will have several two-week windows already established to allow them to plan any vacations without conflict.

Finally, we address Cathleen's concern that Ryan does not allow phone calls between Cathleen and M.H. while M.H. is in his care. We agree that this is concerning—particularly since M.H. will be spending more time at Ryan's home during the summer months. So we modify the decree to provide for two phone

calls between Cathleen and M.H. lasting at least fifteen minutes each week, totaling four calls per two-week period in the summer.

**III. Child Support**

Finally, we address Cathleen's arguments regarding the modified child support awarded for M.H. Her claim that Ryan is not entitled to an extraordinary visitation credit is premised on her claim that Ryan should not receive additional summer visitation. Because we agree with the district court that Ryan should receive the additional summer visitation, we reject that argument.

Next, Cathleen argues Ryan should not have received an extraordinary visitation credit for 2020 because Ryan's additional summer visitation would not commence until the summer of 2021. In other words Ryan did not receive extraordinary visitation in 2020 while this action was pending in the district court, so he should not get credit for it. On this point, we agree. We remand to the district court to calculate the full child support award for 2020. However, because Ryan will receive extraordinary visitation in 2021, he will receive the extraordinary visitation credit from January 2021 onward.

Cathleen also suggests the district court should have retroactively awarded the modified child support award beginning in August 2019, when support for just one child began. Iowa Code section 598.21C(5) permits the court to retroactively modify child support "only from three months after the date the notice of the pending petition for modification is served on the opposing party." Ryan received notice of the modification action on September 20, 2019. So three months elapsed on December 20, and January 2020 was the first month where the court was able

to retroactively award the modified support. So we conclude the district court could award the modified support no earlier than it already did.

## IV. Conclusion

In summary, we affirm the postsecondary education subsidy for the 2020-2021 academic year. We affirm the denial of a subsidy for the 2019–2020 school year and for future subsidies on this record. We modify the dissolution decree to provide for two phone calls between Cathleen and M.H. lasting at least fifteen minutes each week while M.H. is in Ryan's care during summer visitation. We remand to the district court to determine the child support award for 2020 without an extraordinary visitation credit.[9]

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[9] We end by acknowledging we have considered the parties' respective arguments properly before us whether or not set forth in full herein.